IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

DARRYL LOVE,

          Petitioner,      :     Case No. 1:12-cv-758

  - vs -                                District Judge Sandra S. Beckwith
                                             Magistrate Judge Michael R. Merz

WARDEN, Warren Correctional Institution,

                                  :

          Respondent.

## REPORT AND RECOMMENDATIONS

Petitioner Darryl Love brought this habeas corpus action *pro se* to obtain relief from his conviction in the Hamilton County Common Pleas Court on October 18, 2007, on counts of attempted murder, felonious assault, aggravated robbery, aggravated burglary, and kidnapping, along with firearm specifications (Petition, Doc. No. 1, PageID 1, ¶ 5).

Love pleads the following grounds for relief:

    **Ground One:** Petitioner was subject to Double Jeopardy.

    **Supporting Facts:** The evidence showed that petitioner committed only one crime. However, not only was Petitioner convicted of more than one crime, any other crime he is alleged to have committed was the result of the same conduct.

    **Ground Two:** Petitioner was subject to Cruel and Unusual Punishment.

    **Supporting Facts:** There was no true evidence presented at trial that Petitioner committed more than one crime, and to sentence Petitioner for all the crimes Petitioner's co-defendant was alleged to have done, but give the co-defendant less than three years is cruel and unusual punishment.

1

>**Ground Three:** Petitioner was actually innocent of crimes other than shooting the victim.
>
>**Supporting Facts:** The evidence shows that the only crime Petitioner should have been tried and/or convicted for was shooting the victim, whether the State wanted to call it Attempted Murder or Felonious Assault.

(Petition, Doc. No. 1.)

**Procedural History**

Petitioner Darryl Love was indicted by the Hamilton County Grand Jury with co-defendant Donnell Heath as follows:

Count One:  attempted murder with two firearm specifications (Indictment, Return of Writ, Doc. No. 15-1, PageID 78-79).

Count Two:  aggravated robbery with two firearm specifications. *Id.* at PageID 79-80.

Count Three:  burglary. *Id.* at PageID 81.

Count Four:  felonious assault with two firearm specifications. *Id.* at PageID 81-82.

Count Five: felonious assault with two firearm specifications. *Id.* at PageID 82-83.

Count Six:  kidnapping with two firearm specifications. *Id.* at PageID 83-84.

Count Seven:  aggravated burglary with two firearm specifications. *Id.* at PageID 85-86.

Count Eight:  burglary. *Id.* at PageID 86.

Count Nine:  aggravated robbery with two firearm specifications. *Id.* at PageID 86-87.

Count Ten:  robbery. *Id.* at PageID 87.

Love was convicted of attempted murder, aggravated robbery, felonious assault, kidnapping, and aggravated burglary (Counts One, Two, Four, Six, and Seven). His additional

convictions on Counts Three and Five were merged with other convictions and he was acquitted on Counts Eight, Nine and Ten, which involved Tiffany Givens, the girlfriend of Antoinne Morrison, who was the victim of the attempted murder. The trial court sentenced Love to an aggregate sentence of fifty-four years. All the firearm specifications were merged into the firearm specification on the attempted murder charge.

Love appealed and the First District Court of Appeals affirmed the convictions and sentence. *State v. Love,* 2009-Ohio-1079, 2009 Ohio App. LEXIS 923 (1st Dist. Mar. 13, 2009). The Ohio Supreme Court accepted a further appeal as to Love's claim that the multiple felonious assault and the attempted murder convictions were allied offenses of similar import which should have been merged. That court ruled in Love's favor on this question and remanded for re-sentencing, requiring a merger of the felonious assault conviction on Count 4 with the attempted murder conviction. *State v. Love,* 124 Ohio St. 3d 560 (2010). On remand, the trial court obeyed the Ohio Supreme Court's mandate and merged the felonious assault and attempted murder sentences to reduce the total incarceration to forty-three years.

Love appealed again, this time arguing that the kidnapping and aggravated robbery were allies offenses of similar import and also raising his cruel and unusual punishment claim. The court of appeals affirmed and the Ohio Supreme Court declined to consider a further appeal. Love then filed the instant habeas petition.

3

# Analysis

**Ground One: Double Jeopardy**

In his First Ground for Relief, Love asserts he committed only one crime, the attempted murder, and separate convictions and punishment on the other crimes is barred by the Double Jeopardy Clause.

The Warden concedes that raising claims under the Ohio multiple conviction statute, Ohio Revised Code § 2941.25, is an adequately fair presentation of the Double Jeopardy claim to the state courts, except that Love never argued there was a legal basis for merging all the counts. That is, he argued felonious assault should be merged with attempted murder and aggravated robbery should be merged with kidnapping, but never that they should all be merged (Return of Writ, Doc. No. 15, PageID 66).

Love makes no response on the law, but rather on the facts. He asserts "Petitioner committed one true criminal act – he shot the victim in the stomach. Contrary to all the fabrications regarding Petitioner's role, there was no evidence, direct or otherwise, showing or proving that Petitioner did anything but this one act." (Reply, Doc. No. 21, PageID 1071.) The factual findings by the court of appeals are as follows:

> **The Shooting and its Aftermath**
>
> [*P2] Antoinne Morrison testified that, one night after 11:00 p.m., Love had called him on the telephone and asked him to come out of his apartment. When Morrison went into the hallway of his apartment building, he saw that Love and Donnell Heath were there.
>
> [*P3] Love shot Morrison in the abdomen and went into his apartment. Heath then chased Morrison to the parking lot of the

> apartment complex, where he attempted to force him into the trunk of a car. According to Morrison, Heath shot him several times on the way to the parking lot.
>
> [*P4] Meanwhile, according to Morrison's girlfriend, Tiffany Givens, a man had come into the apartment and ordered her to the floor at gunpoint. He then ransacked the apartment, overturning furniture and rifling through drawers. Givens testified that the man had taken two sets of keys before leaving.
>
> [*P5] According to Morrison, he had seen Love join Heath in the parking lot. Although Morrison believed that Love had fled soon after joining Heath and that he had not helped Heath force him into the trunk, a neighbor testified that the men had acted together in carrying Morrison to the car.

*State v. Love,* 2009-Ohio-1079, 2009 Ohio App. LEXIS 923 (1st Dist. Mar. 13, 2009). Love claims these factual findings are refuted by the record and he quotes Morrison's testimony that Heath dragged Morrison to the car by himself and that Love had already run off (Reply, Doc. No. 21, PageID 1071). Nothing in the quoted testimony from Morrison refutes Givens' testimony that Love ordered her to the floor at gunpoint, ransacked the apartment she shared with Morrison, and stole two sets of keys.

Love does not dispute that there was testimony from a neighbor that the two men, Love and Heath, were trying to get Morrison into the trunk of the car. Instead, Love says we should believe Heath and not the neighbor:

> [W]ho would be in a better position than the victim to say what did or did not happen to him? Moreover, why would the victim have reason to lie about what Petitioner did not do to him under the circumstances? . . . Who would know better whether there were two people or one person forcing him into a trunk? The one being forced into the trunk who could sensibly feel the number of hands on him, and know the proximity of anyone directly within his sight, or someone who claims what he or she saw from afar off?

(Reply, Doc. No. 21, PageID 1073). When there is competing testimony as there was here about

5

whether Heath and Love together or Heath alone tried to confine Morrison in the trunk, it is for the jury to decide who is more credible. Neither the state court of appeals nor the federal habeas court can disturb a factual finding such as this based on conflicting testimony. See *Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam)*.

Moreover, this claim -- that the kidnapping should be merged with the attempted murder -- is one that Love never made in the state courts and has thus procedurally defaulted. Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright v. Sykes*. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two

6

offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and *Garrett v. United States*, 471 U.S. 773, 779 (1985). *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Volpe, citing Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

Where the state courts have determined that state law allows multiple punishments for what is claimed to be one offense, that determination is binding on a habeas court considering a Double Jeopardy claim. Therefore Love's First Ground for Relief is without merit and should be dismissed.

**Ground Two: Cruel and Unusual Punishment**

Love's argument here is that it is cruel and unusual punishment for him to be serving "almost half a century when his co-defendant serves less than three years for having the most involvement in the events described herein, and Petitioner not be subject to cruel and unusual treatment?" (Reply, Doc. No. 21, PageID 1074.)

This Court cannot explain the gross discrepancy in these sentences, particularly on so few

7

facts; to attempt to do so would be pure speculation. However, federal habeas corpus courts can only grant relief on the basis of constitutional violations. And when a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

This Cruel and Unusual Punishment claim was decided by the First District Court of Appeals on Love's second direct appeal. It held:

> **[\*\*P8]** In his second assignment of error, Love argues that his 43-year prison term constitutes a cruel and unusual punishment proscribed by the Eighth Amendment to the United States Constitution. Generally, a sentence such as this one that falls within the range provided by statute cannot amount to cruel and unusual punishment. See *McDougle v. Maxwell* (1964), 1 Ohio St. 2d 68, 69, 203 N.E. 2d 334. Here, the trial court had presided over the trial at which evidence showed that Love had called his victim on the telephone and had told him to come out of his apartment. When the victim did, Love shot him in the abdomen and went into his apartment. After ransacking the victim's apartment and threatening the woman found within it, Love and his co-defendant, who had shot the victim several more times, tried to stuff the victim into the trunk of their car. The trial court also had reviewed the presentence investigation, which revealed Love's extensive and violent criminal and juvenile history. In light of these facts, Love's aggregate sentence is not so disproportionate that it "shock[s] the sense of justice of the community." *State v. Weitbrecht,* 86 Ohio St. 3d 368, 371, 1999 Ohio 113, 715 N.E. 2d 167, *quoting McDougle v. Maxwell,* 1 Ohio St. 2d at 70, 203 N.E. 2d 334; see, also, *State v. Hairston*, 118 Ohio St. 3d 289, 2008 Ohio 2338, 888 N.E. 2d 1073, ¶ 14. The assignment of error is overruled.

*State v. Love,* 194 Ohio App. 3d 16, ¶ 8 (1st Dist,. May 11, 2011).

The Eighth Amendment does not require a strict proportionality between the crime and sentence. Rather, it only prohibits "extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957 (1991)(plurality opinion); *United States v. Marks,* 209 F.3d 577, 583 (6th Cir. 2000). The gross disproportionality principle is applicable only in the exceedingly rare and extreme case. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A sentence within the statutory maximum generally does not constitute cruel and unusual punishment. *Austin v. Jackson,* 213 F.3d 298 (6th Cir. 2000); *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995).

The state court of appeals decision on this claim is not an objectively unreasonable application of clearly established Supreme Court precedent. Ground Two should therefore be dismissed.

**Ground Three: Actual Innocence Except for Attempted Murder**

In his Third Ground for Relief, Love asserts he is actually innocent of all crimes of which he was convicted except the attempted murder. However, the Supreme Court has never recognized a stand alone actual innocence claim as a basis for habeas corpus relief. *Herrera v. Collins*, 506 U.S. 390 (1993).

> Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001). The Supreme Court has twice suggested that a "truly persuasive demonstration" of actual innocence would render a petitioner's execution unconstitutional. *Herrera v Collins,* 506 U.S. 390, 417 (1993); *House v. Bell*, 547 U.S. 518 (2006).

9

*Raymond v. Sheets*, 2012 U.S. Dist. LEXIS 160374, *26-27 (S.D. Ohio Nov. 8, 2012).

In his Reply, Love argues his Third Ground together with his First Ground (Reply, Doc. No. 21, PageID 1071). For the reasons given above with respect to the First Ground for Relief, a habeas corpus court cannot rejected the credibility findings of the jury and the state courts. Ground Three should be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

February 3, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).